UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JAMES MICHAEL MUNRO, | ) | |
| | ) | |
| Petitioner, | ) | CASE NO. 2:07-cv-01404-RSL-JLW |
| | ) | |
| v. | ) | |
| | ) | |
| R. SUBIA, Warden, *et al.*, | ) | REPORT AND RECOMMENDATION |
| | ) | ON MERITS OF PETITION |
| Respondents. | ) | |
| | ) | |

I.    SUMMARY

        Petitioner James Michael Munro is currently incarcerated at the Mule Creek State Prison in Ione, California.  He pled guilty to second degree murder in Los Angeles County Superior Court in 1981, and was sentenced to fifteen-years-to-life with the possibility of parole.  He has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 challenging the 2005 denial of parole by the Board of Parole Hearings of the State of California (the "Board").[1]  Petitioner also filed three motions seeking a court order staying future parole hearings, board reports, and mental health evaluations pending resolution of his case, which this Court construed as motions for preliminary injunctive relief.  (*See* Dockets 3, 10, 11, and

---

[1] The Board of Parole Hearings replaced the Board of Prison Terms, which was abolished on July 1, 2005.  *See* California Penal Code § 5075(a).

01   27.)  This Court denied petitioner's motions on April 24, 2009, adopting a Report and

02   Recommendation dated February 23, 2009.  (*See* Dkts. 27 and 28.)  Respondent has filed an

03   answer to the petition together with relevant portions of the state court record, and petitioner

04   has filed a reply to the answer.  (*See* Dkts. 15 and 18.)  Thus, the briefing is now complete and

05   this matter is ripe for review.  The Court, having thoroughly reviewed the record and briefing

06   of the parties, recommends the petition be denied and this action be dismissed with prejudice.

07       II.   BACKGROUND

08       The Los Angeles County Superior Court set forth the following relevant facts:

09
              Petitioner is serving a [fifteen-years-to-life] term for second-
10            degree murder.  The record reflects the victim, Steven Wells,
              was an [eighteen-year-old] at the time of the commitment
11            offense.  Wells was hitchhiking when he was picked up by
              petitioner and his crime partner, William Bonnen.  Petitioner
12            and Bonnen took Wells to Bonnen's house and tied him to a
              chair.  At first, petitioner merely watched from the door of the
13            room while Bonnen hit Wells and stole his money.  Eventually,
              petitioner helped by holding the victim's legs while Bonnen
14            proceeded to strangle Wells to death.  Then petitioner and
              Bonnen disposed of the body.

15   (Dkt. 15, Exhibit B at 2.)

16       Petitioner pled guilty to one count of second degree murder in Los Angeles County

17   Superior Court, and his minimum eligible parole date was set for April 24, 1989.  (*See* Dkt. 1,

18   Ex. B at 1.[2])  The parole denial which is the subject of this petition took place after a parole

19   hearing held on February 9, 2005.  (*See id*.)  This was petitioner's sixth subsequent and

20   seventh overall parole consideration hearing.  (*See id.* at 31.)  As of the date of the 2005

21   _____

22       [2] Petitioner failed to label the exhibits to his petition.  The Court will therefore refer to the California
     Supreme Court Order attached to his petition as "Exhibit A," and the 2005 parole hearing transcript as "Exhibit
     B."

REPORT AND RECOMMENDATION
ON MERITS OF PETITION -2

01 parole hearing, petitioner was forty-three-years-old, and had been in custody for

02 approximately twenty-three years.  (*See id*. at 11.)

03     After denial of his 2005 application, petitioner filed habeas corpus petitions in the Los

04 Angeles County Superior Court, California Court of Appeal, and California Supreme Court.

05 (*See* Dkt. 15, Exs. A, C, and E.)  Those petitions were unsuccessful.  (*See id*., Exs. B, D, and

06 F.)  This federal habeas petition followed.  Petitioner contends the 2005 denial by the Board

07 violated his Fifth and Fourteenth Amendment Due Process rights.  Thus, petitioner does not

08 challenge the validity of his conviction, but instead challenges the Board's 2005 decision

09 finding him unsuitable for parole.

10     III.     STANDARD OF REVIEW

11     The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this

12 petition because it was filed after the enactment of AEDPA.  *See Lindh v. Murphy*, 521 U.S.

13 320, 326-27 (1997).  Because petitioner is in custody of the California Department of

14 Corrections pursuant to a state court judgment, 28 U.S.C. § 2254 provides the exclusive

15 vehicle for his habeas petition.  *See White v. Lambert*, 370 F.3d 1002, 1009-10 (9th Cir.), *cert*.

16 *denied*, 543 U.S. 991 (2004) (providing that § 2254 is "the exclusive vehicle for a habeas

17 petition by a state prisoner in custody pursuant to a state court judgment, even when the

18 petitioner is not challenging his underlying state court conviction.").  Under AEDPA, a habeas

19 petition may not be granted with respect to any claim adjudicated on the merits in state court

20 unless petitioner demonstrates that the highest state court decision rejecting his petition was

21 either "contrary to, or involved an unreasonable application of, clearly established Federal

22 law, as determined by the Supreme Court of the United States," or "was based on an

REPORT AND RECOMMENDATION
ON MERITS OF PETITION -3

01 unreasonable determination of the facts in light of the evidence presented in the State court

02 proceeding." 28 U.S.C. § 2254(d)(1) and (2).

03        As a threshold matter, this Court must ascertain whether relevant federal law was

04 "clearly established" at the time of the state court's decision.  To make this determination, the

05 Court may only consider the holdings, as opposed to dicta, of the United States Supreme

06 Court.  *See Williams v. Taylor*, 529 U.S. 362, 412 (2000).  In this context, Ninth Circuit

07 precedent remains persuasive but not binding authority.  *See id.* at 412-13; *Clark v. Murphy*,

08  331 F.3d 1062, 1069 (9th Cir. 2003).

09        The Court must then determine whether the state court's decision was "contrary to, or

10 involved an unreasonable application of, clearly established Federal law."  *See Lockyer v.*

11 *Andrade*, 538 U.S. 63, 71 (2003).  "Under the 'contrary to' clause, a federal habeas court may

12 grant the writ if the state court arrives at a conclusion opposite to that reached by [the

13 Supreme] Court on a question of law or if the state court decides a case differently than [the]

14 Court has on a set of materially indistinguishable facts."  *Williams*, 529 U.S. at 412-13.

15 "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the

16 state court identifies the correct governing legal principle from [the] Court's decisions but

17 unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413.  At all

18 times, a federal habeas court must keep in mind that it "may not issue the writ simply because

19 [it] concludes in its independent judgment that the relevant state-court decision applied clearly

20 established federal law erroneously or incorrectly.  Rather that application must also be

21 [objectively] unreasonable."  *Id.* at 411.

22

REPORT AND RECOMMENDATION
ON MERITS OF PETITION -4

01          In each case, the petitioner has the burden of establishing that the state court decision

02   was contrary to, or involved an unreasonable application of, clearly established federal law.

03   *See* 28 U.S.C. § 2254; *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996).  To determine

04   whether the petitioner has met this burden, a federal habeas court looks to the last reasoned

05   state court decision because subsequent unexplained orders upholding that judgment are

06   presumed to rest upon the same ground.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04

07   (1991); *Medley v. Runnels*, 506 F.3d 857, 862 (9th Cir. 2007).

08          Finally, AEDPA requires federal courts to give considerable deference to state court

09   decisions, and state courts' factual findings are presumed correct.  *See* 28 U.S.C. § 2254(e)(1).

10   Federal courts are also bound by a state's interpretation of its own laws.  *See Murtishaw v.*

11   *Woodford*, 255 F.3d 926, 964 (9th Cir. 2001) (citing *Powell v. Ducharme,* 998 F.2d 710, 713

12   (9th Cir. 1993)).

13          IV.     FEDERAL HABEAS CHALLENGES TO STATE PAROLE DENIALS

14          A.     *Due Process Right to be Released on Parole*

15          Under the Fifth and Fourteenth Amendments to the United States Constitution, the

16   government is prohibited from depriving an inmate of life, liberty or property without the due

17   process of law.  U.S. Const. amends. V, XIV.  A prisoner's due process claim must be

18   analyzed in two steps: the first asks whether the state has interfered with a constitutionally

19   protected liberty or property interest of the prisoner, and the second asks whether the

20   procedures accompanying that interference were constitutionally sufficient.  *Ky. Dep't of*

21   *Corrs. v. Thompson*, 490 U.S. 454, 460 (1989); *Sass v. Cal. Bd. of Prison Terms*, 461 F.3d

22   1123, 1127 (9th Cir. 2006).

REPORT AND RECOMMENDATION
ON MERITS OF PETITION -5

01          Accordingly, our first inquiry is whether petitioner has a constitutionally protected

02   liberty interest in parole.  The Supreme Court articulated the governing rule in this area in

03   *Greenholtz v. Inmates of Neb. Penal,* 442 U.S. 1 (1979), and *Board of Pardons v. Allen,* 482

04   U.S. 369 (1987).  *See McQuillion v. Duncan*, 306 F.3d 895, 902 (9th Cir. 2002) (applying

05   "the 'clearly established' framework of *Greenholtz* and *Allen"* to California's parole scheme).

06   The Court in *Greenholtz* determined that although there is no constitutional right to be

07   conditionally released on parole, if a state's statutory scheme employs mandatory language

08   that creates a presumption that parole release will be granted if certain designated findings are

09   made, the statute gives rise to a constitutional liberty interest.  *See Greenholtz*, 442 U.S. at 7,

10   12; *Allen*, 482 U.S. at 377-78.

11          As discussed *infra*, California statutes and regulations afford a prisoner serving an

12   indeterminate life sentence an expectation of parole unless, in the judgment of the parole

13   authority, he "will pose an unreasonable risk of danger to society if released from prison."

14   Title 15 Cal. Code Regs., § 2402(a).  The Ninth Circuit has therefore held that "California's

15   parole scheme gives rise to a cognizable liberty interest in release on parole."  *McQuillion*,

16   306 F.3d at 902.  To similar effect,  *Irons v. Carey*, 505 F.3d 846, 850 (9th Cir. 2007) held

17   that California Penal Code § 3041 vests all "prisoners whose sentences provide for the

18   possibility of parole with a constitutionally protected liberty interest in the receipt of a parole

19   release date, a liberty interest that is protected by the procedural safeguards of the Due

20   Process Clause."  This "liberty interest is created, not upon the grant of a parole date, but

21   upon the incarceration of the inmate." *Biggs v. Terhune*, 334 F.3d 910, 915 (2003).  *See also*

22   *Sass*, 461 F.3d at 1127.

REPORT AND RECOMMENDATION
ON MERITS OF PETITION -6

01        Because the Board's denial of parole interfered with petitioner's constitutionally-

02   protected liberty interest, this Court must proceed to the second step in the procedural due

03   process analysis and determine whether the procedures accompanying that interference were

04   constitutionally sufficient.  "[T]he Supreme Court [has] clearly established that a parole

05   board's decision deprives a prisoner of due process with respect to this interest if the board's

06   decision is not supported by 'some evidence in the record.'"  *Irons*, 505 F.3d at 851 (citing

07   *Superintendent v. Hill*, 472 U.S. 445, 457 (1985) (holding the "some evidence" standard

08   applies in prison disciplinary proceedings)).  The "some evidence" standard requires this

09   Court to determine "whether there is any evidence in the record that could support the

10   conclusion reached by the disciplinary board."  *Hill*, 472 U.S. at 455-56.  Although *Hill*

11   involved the accumulation of good time credits rather than release on parole, later cases have

12   held that the same constitutional principles apply in the parole context because both situations

13   directly affect the duration of the prison term.  *See e.g., Jancsek v. Or. Bd. of Parole*, 833 F.2d

14   1389, 1390 (9th Cir. 1987) (adopting the "some evidence" standard set forth by the Supreme

15   Court in *Hill* in the parole context); *Sass*, 461 F.3d at 1128-29 (holding the same); *Biggs*, 334

16   F.3d at 915 (holding the same); *McQuillion*, 306 F.3d at 904 (holding the same).

17        "The fundamental fairness guaranteed by the Due Process Clause does not require

18   courts to set aside decisions of prison administrators that have some basis in fact," however.

19   *Hill*, 472 U.S. at 456.  Similarly, the "some evidence" standard is not an invitation to examine

20   the entire record, independently assess witnesses' credibility, or re-weigh the evidence.  *Id.* at

21   455.  Instead, it is there to ensure that an inmate's loss of parole was not arbitrarily imposed.

22   *See id.* at 454.  The Court in *Hill* added an exclamation point to the limited scope of federal

REPORT AND RECOMMENDATION
ON MERITS OF PETITION -7

01  habeas review when it upheld the finding of the prison administrators despite the Court's

02  characterization of the supporting evidence as "meager." *See id.* at 457.

03         B.      *California's Statutory and Regulatory Scheme*

04         In order to determine whether "some evidence" supported the Board's decision with

05  respect to petitioner, this Court must consider the California statutes and regulations that

06  govern the Board's decision-making. *See Biggs*, 334 F.3d at 915.  Under California law, the

07  Board is authorized to set release dates and grant parole for inmates with indeterminate

08  sentences. *See* Cal. Penal Code § 3040 and 5075, *et seq*.  Section 3041(a) requires the Board

09  to meet with each inmate one year before the expiration of his minimum sentence and

10  normally set a release date in a manner that will provide uniform terms for offenses of similar

11  gravity and magnitude with respect to their threat to the public, as well as comply with

12  applicable sentencing rules.  Subsection (b) of this section requires that the Board set a release

13  date "unless it determines that the gravity of current convicted offense or offenses, or the

14  timing and gravity of current or past convicted offense or offenses, is such that consideration

15  of the public safety requires a more lengthy period of incarceration." *Id.*, § 3041(b).  Pursuant

16  to the mandate of § 3041(a), the Board must "establish criteria for the setting of parole release

17  dates" which take into account the number of victims of the offense as well as other factors in

18  mitigation or aggravation of the crime.  The Board has therefore promulgated regulations

19  setting forth the guidelines it must follow when determining parole suitability. *See* 15 CCR

20  § 2402, *et seq*.

21         Accordingly, the Board is guided by the following regulations in making a

22  determination whether a prisoner is suitable for parole:

REPORT AND RECOMMENDATION
ON MERITS OF PETITION -8

(a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.

(b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

15 CCR § 2402(a) and (b).  Subsections (c) and (d) also set forth suitability and unsuitability factors to further assist the Board in analyzing whether an inmate should be granted parole, although "the importance attached to any circumstance or combination of circumstances in a particular case is left to the judgment of the panel." 15 CCR § 2402(c).

In examining its own statutory and regulatory framework, the California Supreme Court in *In re Lawrence* recently held that the proper inquiry for a reviewing court is "whether some evidence supports the *decision* of the Board … that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings." *Id.*, 44 Cal.4th 1181, 1212 (2008).  The court also asserted that the Board's decision must demonstrate "an individualized consideration of the specified criteria, but "[i]t is not the existence or nonexistence of suitability or unsuitability factors that forms the crux of the parole decision; the significant circumstance is how those factors interrelate to support a conclusion of current dangerousness to the public." *Id.* at 1204-05, 1212.  As long as the evidence underlying the Board's decision has "some indicia of

REPORT AND RECOMMENDATION
ON MERITS OF PETITION -9

01  reliability," parole has not been arbitrarily denied.  *See Jancsek*, 833 F.2d at 1390.  As the

02  California courts have continually noted, the Board's discretion in parole release matters is

03  very broad.  *See Lawrence*, 44 Cal.4th at 1204.  Thus, the penal code, corresponding

04  regulations, and California law clearly establish that the fundamental consideration in parole

05  decisions is public safety and an assessment of a prisoner's current dangerousness.  *See id.*, at

06  1205-06.

07      C.      *Summary of Governing Principles*

08      By virtue of California law, petitioner has a constitutional liberty interest in release on

09  parole.  The parole authorities may decline to set a parole date only upon a finding that

10  petitioner's release would present an unreasonable present risk of danger to society if he is

11  released from prison.  Where the parole authorities deny release, based upon an adverse

12  finding on that issue, the role of a federal habeas court is narrowly limited.  It must deny relief

13  if there is "some evidence" in the record to support the parole authority's finding of present

14  dangerousness.  The penal code, corresponding regulations, and California law clearly support

15  this definition of the issues.

16      V.      PARTIES' CONTENTIONS

17      Petitioner contends that the Board violated his federal due process rights by finding

18  him unsuitable for parole without "some evidence" that he poses an unreasonable risk of

19  danger to society if released from prison.  (*See* Dkt. 1 at 3-6.)  Specifically, petitioner claims

20  the Board improperly relied upon immutable facts, such as the nature of the commitment

21  offense, to deny him parole.  (*See id.*)  Petitioner asserts that the Board "violated petitioner's

22  [right to] equal protection and … due process rights when they used confidential information

REPORT AND RECOMMENDATION
ON MERITS OF PETITION -10

01   to deny petitioner parole" during the hearing.  (*See id*. at 8.)  He also claims that he received

02   ineffective assistance of counsel at his parole hearing, and that the Board violated his plea

03   agreement.  (*See id*. at 8-9.)  Finally, petitioner contends that his "continued incarceration has

04   essentially converted petitioner's sentence of 15 to life with the possibility of parole to life in

05   prison without the possibility of parole," in violation of the Ex Post Facto Clause.  (*See id*. at

06   9.)

07        Respondent claims that petitioner does not have a constitutionally protected liberty

08   interest in being released on parole, that the "some evidence" standard is inapplicable in this

09   context, and that even if he does have a protected liberty interest, the Board adequately

10   predicated its denial of parole on "some evidence."  (*See* Dkt. 15 at 3-7.)  Accordingly,

11   respondent argues that petitioner's constitutional rights were not violated by the Board's 2005

12   decision, and the Los Angeles County Superior Court's Order upholding the Board's 2005

13   parole denial was not an unreasonable application of clearly established federal law.  (*See id*.

14   at 7-9.)

15        VI.     ANALYSIS OF RECORD IN THIS CASE

16        A.     *State Court Proceedings*

17        After the Los Angeles County Superior Court denied his habeas petition, petitioner

18   filed habeas petitions in the California Court of Appeal and California Supreme Court.  (*See*

19   *id*., Exs. B, C and E.)  Both petitions were summarily denied.  (*See id*., Exs. D and F.)

20   Petitioner's habeas petition was timely, and he properly exhausted each of his claims before

21

22

REPORT AND RECOMMENDATION
ON MERITS OF PETITION -11

01   the California Supreme Court.[3]  (*See* Dkt. 1 at 3-10; Dkt. 15, Ex. E at 3-7.)  This Court

02   reviews the Los Angeles County Superior Court's Order upholding the Board's decision to

03   determine whether it meets the deferential AEDPA standards, as it is the last reasoned state

04   court decision.  *See Ylst*, 501 U.S. at 803-04.

05       B.    *Petitioner's Due Process Claim*

06       The Board based its decision that petitioner was unsuitable for parole primarily upon

07   his commitment offense, but also cited his unstable social history, unfavorable psychiatric

08   evaluations, insufficient participation in self-help programming, insufficient parole plans,

09   opposition by law enforcement and the victim's surviving family members, and a confidential

10   letter opposing petitioner's release on parole.  (*See* Dkt. 1, Ex. B at 73-79.)  The Board's

11   findings tracked the applicable unsuitability and suitability factors listed in § 2402(b), (c) and

12   (d) of title 15 of the California Code of Regulations.  After considering all reliable evidence in

13   the record, the Board concluded that evidence of petitioner's positive behavior in prison did

14   not outweigh evidence of his unsuitability for parole.  (*See id*. at 76.)

15       The Board primarily relied upon the circumstances of petitioner's commitment offense

16   to find him unsuitable for parole.  (*See id*. at 73-74.)  It asserted that "this was a horrific

17   crime.  This was the murder of an 18 year old boy who was abused, tied up, abused, and

18   robbed before he was murdered in a horrible way.  Had to have been absolutely terrifying … a

19   horrible death for him."  (*See id*. at 73.)  The Board found that the offense "was carried out in

20

21       [3] Respondent asserts that "[t]o the extent that this Petitioner alleges that his punishment is disproportional to his crime, or that he was entitled to a term fixing hearing in or about 1977, the claim is not timely under 28 U.S.C. § 2244(d)(1)."  (*See* Dkt. 15 at 2.)  It is unclear to the Court, however, which of

22   petitioner's claims respondent is referencing.  Because respondent also "admit[ted] the Petition is timely under 28 U.S.C. § 2244(d)(1) and that the Petitioner is not subject to any other procedural bar," the Court will turn to the merits of the petition.  (*See id*.)

REPORT AND RECOMMENDATION
ON MERITS OF PETITION -12

01  a very cruel manner.  Certainly the victim was abused during the offense.  And it was carried

02  out in a manner that demonstrates an exceptionally callous disregard for human suffering."

03  (*See id*.)  In addition, the "motive for the crime was inexplicable, absolutely inexplicable."

04  (*See id*. at 73-74.)  *See also* 15 CCR § 2402(c)(1)(C), (D), and (E).  Once the victim was dead,

05  "his body was just disposed of like so much garbage."  (*See* Dkt. 1, Ex. B at 73.)  The

06  circumstances surrounding petitioner's commitment offense therefore provides "some

07  evidence" to support the Board's conclusion that petitioner would present an unreasonable

08  risk of danger to society if released from prison.

09          The second unsuitability factor relied upon by the Board was petitioner's unstable

10  social history, which is defined as a "history of unstable or tumultuous relationships with

11  others."  (*See id*. at 74.)  *See also* 15 CCR § 2402(c)(3).  The Board based its finding upon

12  evidence that petitioner dropped out of school in the tenth grade, ran away from home on

13  several occasions, and was "[committed] by his parents to a psychiatric hospital for a year."

14  (*See* Dkt. 1, Ex. B at 5, 20, and 74.)  In addition, petitioner's relationships with his two sisters

15  and adoptive father have been troubled, as demonstrated by their refusal to have any contact

16  with petitioner for years at a time.  (*See id*. at 53-54; Dkt. 15, Ex. B at 3.)  Thus, there was

17  "some evidence" in the record to support the Board's finding that petitioner has an unstable

18  social history.

19          The third and fourth factors relied upon by the Board to deny parole were petitioner's

20  unfavorable psychiatric evaluations and insufficient participation in beneficial self-help

21  programming.  (*See* Dkt. 1, Ex. B at 74.)  Petitioner's most recent psychiatric evaluation,

22  which was conducted on July 29, 2004, asserted that petitioner would pose a "moderate risk

REPORT AND RECOMMENDATION
ON MERITS OF PETITION -13

01   for re-offense if discharged to the free community." (*Id*.)  The psychiatrist commented that

02   "[t]he two things that were remarkable about the interview with Mr. Munro were his apparent

03   lack of true empathy and the amount that he deviated from the truth.  Throughout the

04   interview, there seemed to be a disconnect where true emotion might have been expected and

05   where crying was expressed." (*Id*.)  During the hearing, the Board also noted that a past

06   psychiatrists found that petitioner "has not psychologically distanced himself fully from [his

07   crime partner, serial killer] Bonnen.  [Petitioner] commented that Bonnen gave him, quote,

08   instructions of who to murder, end of quote, e.g. profiling of potential victims when he is

09   released ... [and petitioner] presented this information as if it were a proud achievement." (*Id*.

10   at 47-48.)  Furthermore, the psychiatrist observed that "[t]he inmate appears to center his life

11   around his crime as a famous serial killer, thereby mentally keeping his association with

12   Bonnen alive." (*Id*. at 48.)

13        The Board also found that petitioner "has programmed in a limited manner … and has

14   not yet sufficiently participated in beneficial self-help programs while he's been

15   incarcerated." (*Id*. at 74.)  Specifically, "[a]part from the Veteran's Support Group, there

16   really hasn't been any self-help [completed by petitioner] in recent years." (*Id*. at 77.)  The

17   Board also noted that psychiatrists have diagnosed petitioner with an alcohol dependence

18   problem that has not been adequately addressed with self-help programming during his

19   incarceration. (*See id*. at 74-75.)  Based upon petitioner's unfavorable psychiatric evaluations

20   and insufficient self-help programming, there was "some evidence" in the record to support

21   the Board's finding that petitioner "[needs] a longer period of [psychiatric] observation and

22   evaluation and treatment … and needs additional time to gain [self-help] programming." (*Id*.

REPORT AND RECOMMENDATION
ON MERITS OF PETITION -14

01 at 76-77.)

02         The fifth factor relied upon by the Board was petitioner's insufficient parole plans.

03 *See* 15 CCR § 2402(d)(8) (providing that a prisoner's "realistic plans for release or

04 [development of] marketable skills that can be put to use upon release" constitutes a factor

05 indicating suitability for release on parole).  The Board noted that petitioner "has parole plans

06 to Michigan, where his wife is, and she has offered a home and also assistance in helping him

07 find work.  However, he doesn't have any plans for work at this time."  (*See* Dkt. 1, Ex. B at

08 75.)  Petitioner also lacks parole plans in California.  (*See id.*)  Contrary to petitioner's

09 representation to the panel that he completed vocational training programs that would enable

10 him to obtain employment, the Board's review of petitioner's central file revealed that the

11 trades petitioner "claimed to have completed, according to the documents … were only

12 sometimes a couple months in progress."  (*Id.* at 78.)  Although petitioner's lack of firm

13 parole plans, considered alone, might be an insufficient basis to deny him a parole date, when

14 combined with the Board's findings regarding other unsuitability factors, it provides "some

15 evidence" to support the Board's conclusion that petitioner is unsuitable for parole.  *See* 15

16 CCR § 2402(b) ("Circumstances which taken alone may not firmly establish unsuitability for

17 parole may contribute to a pattern which results in a finding of unsuitability.").

18         The sixth factor considered by the Board was opposition to petitioner's release on

19 parole by the Los Angeles County District Attorney and the victim's surviving family

20 members.  (*See* Dkt. 1, Ex. B at 75.)  In making its suitability determination, the Board must

21 "take into account all pertinent information and input about the particular case from the

22 inmate's victims, the officials familiar with his or her criminal background, and other

REPORT AND RECOMMENDATION
ON MERITS OF PETITION -15

01  members of the public who have an interest in the grant or denial of parole to this prisoner."

02  *In re Dannenberg,* 34 Cal.4th 1061, 1086 (2005).  California law affords a deceased victim's

03  next of kin or immediate family members the opportunity to make a statement at the

04  prisoner's parole hearing.  *See* 15 CCR § 2029.  In addition, a prosecutor may attend a parole

05  hearing to represent "the interests of the people," and may "comment on the facts of the case

06  and present an opinion about the appropriate disposition."  *See* Cal. Penal Code § 3041.7; 15

07  CCR § 2030.  *See also Rosenkrantz v. Marshall,* 444 F. Supp. 2d 1063, 1080 n.14 (C.D. Cal.

08  2006) (noting that in the absence of other reliable evidence of unsuitability in the record,

09  opposition by law enforcement based upon the nature of the commitment offense does not

10  constitute "some evidence" to support parole denial).  Because the Board relied upon other

11  reliable evidence of petitioner's unsuitability for parole, in addition to its consideration of

12  opposition by law enforcement and the victim's surviving family members, its finding that

13  petitioner would present an unreasonable risk of danger to society if released on parole was

14  not arbitrary and capricious.

15       Finally, the Board considered a confidential letter opposing petitioner's release during

16  the hearing.  Specifically, the Board informed petitioner that "there is a confidential fearful

17  letter that we did consider that contained information that we felt supported a finding of

18  unsuitability at this time."  (*See* Dkt. 1, Ex. B at 75.)  The Board further described the letter as

19  "a very small handwritten letter, of a fearful person, family, [opposing petitioner's] release."

20  (*See id*. at 49.)

21       Petitioner's argument that the Board "violated petitioner's [right to] equal protection

22  and … due process rights when they used confidential information to deny petitioner parole"

01 is unavailing.  (*See* Dkt. 1 at 8.)  California law does not afford petitioner the right to review

02 information that has been designated as "confidential," even though the panel considered it

03 when determining whether petitioner was suitable for parole.  *See* 15 CCR § 2447.   The

04 relevant California regulations provide that "[n]o decision [by the Board] shall be based upon

05 information that is not available to the prisoner unless the information has been designated

06 confidential under the rules of the department and is necessary to the decision." *Id*., § 2235.

07 Thus, a prisoner may only "review nonconfidential documents in the department central file,"

08 and must appeal pursuant to department procedures if he is dissatisfied with the level of

09 disclosure he received.  *Id*., § 2447.  There is nothing in the record to suggest petitioner filed

10 such an appeal.  The confidential letter was therefore properly considered by the Board during

11 the hearing.

12          Contrary to petitioner's argument that the Board failed to consider or give appropriate

13 weight to the parole suitability rules which favored petitioner, the Board acknowledged that

14 petitioner "does not have a history of criminal conduct."  (*See* Dkt. 1, Ex. B at 74.)  The

15 Board commended petitioner for completing the classes necessary to graduate from high

16 school.  (*See id*. at 76.)  It also took note of the fact that petitioner has "done a lot of different

17 jobs.  In fact, the federal reports go into great detail about the different jobs that you took …

18 [for] brief periods of time.  And your work product was good." (*Id*. at 78-79.)  It is therefore

19 an inaccurate characterization of the record to say that the Board failed to provide petitioner

20 with an individualized consideration of all relevant factors, and only relied upon the

21 immutable facts of the commitment offense to find him unsuitable for parole.  (*See* Dkt. 1 at

22 5-6.)  As mentioned above, the Board has broad discretion to determine how suitability and

REPORT AND RECOMMENDATION
ON MERITS OF PETITION -17

01  unsuitability factors interrelate to support its conclusion of current dangerousness to the

02  public.  *See Lawrence*, 44 Cal.4th at 1212.  Despite petitioner's recent gains, the Board

03  determined that he remains an unreasonable risk of danger to society if released on parole,

04  and these findings were supported by "some evidence" in the record.  (*See* Dkt. 1, Ex. B at 73

05  and 76.)

06          C.      *Petitioner's Ineffective Assistance Claim*

07          Petitioner alleges that he received ineffective assistance of counsel during his parole

08  hearing because his attorney failed to object to the Board's consideration of confidential

09  information, or otherwise represent petitioner's interests during the hearing.  (*See* Dkt. 1 at 8.)

10  Petitioner asserts that "because of [the attorney's] actions and behavior with the panel

11  members and [the attorney's] failure to tell petitioner they were going to use confidential

12  information" during the hearing, the Board denied petitioner a parole date.  (*Id*.)

13          Petitioner's arguments are unavailing, because the U.S. Constitution does not afford

14  petitioner a right to counsel in the context of parole board hearings.  "[T]he protections of the

15  Sixth Amendment right to counsel do not extend to either state collateral proceedings or

16  federal habeas corpus proceedings."  *Bonin v. Vasquez,* 999 F.2d 425, 430 (9th Cir. 1993).

17  The Ninth Circuit has asserted that "since the setting of a minimum term is not part of the

18  criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not

19  constitutionally mandated...."  *Pedro v. Oregon Parole Bd*., 825 F.2d 1396, 1399 (9th Cir.

20  1987); *Jancsek*, 833 F.2d at 1390.  Because petitioner's constitutional rights were met during

21  his 2005 parole hearing, his ineffective assistance claim should be denied.

22

REPORT AND RECOMMENDATION
ON MERITS OF PETITION -18

01          D.          *Petitioner's* Ex Post Facto *Claim*

02          Petitioner also claims that the Board's consideration of the immutable circumstances

03 of his commitment offense to deny parole "essentially [converted petitioner's] sentence of 15

04 to life with the possibility of parole to life in prison without the possibility of parole."  (*See*

05 Dkt. 1 at 6 and 9.)  Specifically, he asserts that "because the BPH continues to deny

06 [petitioner] parole based on [his] crime and the circumstances of his crime … [petitioner] has

07 no hope for ever obtaining parole except perhaps [if a panel] in the future will arbitrarily hold

08 that the circumstances were not that serious…."  (*Id*. at 6.)  This Court construes petitioner's

09 argument as a claim that the Board's denial violated his right to be free from ex post facto

10 laws, because petitioner contends that the Board has imposed a more severe penalty in place

11 of his indeterminate life sentence.  (*See id*. at 9.)

12          Petitioner's claim fails for multiple reasons.  First, Article I of the United States

13 Constitution provides that neither Congress nor any state shall pass an ex post facto law.  U.S.

14 Const. Art. I, § 9, cl. 3, Art. I, §10, cl. 1.  Hence, the Ex Post Facto Clause, by definition,

15 applies to the Legislative Branch, not to the courts or an administrative body, such as the

16 Board of Parole Hearings.  *See Rogers v. Tennessee,* 532 U.S. 451, 460 (2001) (holding "[t]he

17 Ex Post Facto Clause, by its own terms, does not apply to courts"); *Marks v. United States,*

18 430 U.S. 188, 191 (1977) (holding "[t]he Ex Post Facto Clause is a limitation upon the

19 powers of the Legislature, and does not of its own force apply to the Judicial Branch of

20 government.") (citations omitted)); *Lagrand v. Stewart,* 133 F.3d 1253, 1260 (9th Cir.)

21 (holding "[t]he Ex Post Facto Clause does not apply to court decisions construing statutes."),

22 *cert. denied,* 525 U.S. 971 (1998).

01      Moreover, the Board has not increased petitioner's punishment.  The Ex Post Facto

02 Clause prohibits the retrospective application of criminal statutes that change the definition of

03 a crime or enhance the punishment for a criminal offense.  *See Collins v. Youngblood*, 497

04 U.S. 37, 41 (1990) ("Although the Latin phrase 'ex post facto' literally encompasses any law

05 passed 'after the fact,' it has long been recognized ... that the constitutional prohibition on ex

06 post facto laws applies only to penal statutes which disadvantage the offender affected by

07 them.")  Petitioner was sentenced to a term of fifteen-years-to-life.  While petitioner might

08 have hoped or expected to be released sooner, the Board's decision to deny him a parole

09 release date because he would present an unreasonable risk of danger to society has not

10 enhanced or otherwise "converted" his punishment.  Accordingly, the Board's decision

11 denying petitioner a parole release date did not violate the Ex Post Facto Clause, and

12 petitioner's claim should be denied.

13      E.      *Petitioner's Plea Agreement Claim*

14      Petitioner asserts that the Board "continues to violate … his plea bargain."  (Dkt. 1 at

15 9.)  He claims that as a result of this violation, "the court must by law order petitioner's

16 release … and must not deviate from it."  (*Id*.)  Petitioner fails to explain how the Board

17 violated the terms of his plea agreement or cite any authority to support his contention,

18 however.  As a result, petitioner has failed to state a cognizable claim for relief.

19      To the extent petitioner may have believed the negotiated plea agreement included

20 language that guaranteed him actual release on parole, he has failed to demonstrate that such

21 language existed.  The possibility of parole is not equivalent to a finding of suitability, and

22 under state law (as it existed when he was sentenced and as it exists now) an inmate must be

REPORT AND RECOMMENDATION
ON MERITS OF PETITION -20

01   found suitable by the Board before his release date is set.  Petitioner's sentence was based on

02   a plea agreement of fifteen-years-to-life with the possibility of parole.  Thus, petitioner has

03   received the parole considerations to which he was entitled under that agreement and

04   sentence, and the Board's determination that petitioner was unsuitable for parole at the 2005

05   hearing did not violate petitioner's plea agreement.

06          Petitioner has therefore failed to satisfy his burden of showing he is entitled to the

07   issuance of the writ.  *See Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (holding that it

08   is petitioner's burden to show he is in custody in violation of the Constitution).  Accordingly,

09   I recommend this Court find that no violation of petitioner's plea agreement occurred as a

10   result of the Board's denial of petitioner's application for parole.

11          F.     *Los Angeles County Superior Court Decision*

12          In a reasoned decision denying petitioner's request for habeas relief, the Los Angeles

13   County Superior Court asserted that "[h]aving independently reviewed the record, giving

14   deference to the broad discretion of the [Board] in parole matters, the Court concludes that the

15   record contains 'some evidence' to support the Board's findings that petitioner is unsuitable

16   for parole." (Dkt. 15, Ex. B at 1.)  After summarizing the Board's findings, as well as the

17   applicable suitability and unsuitability factors, the superior court concluded that the facts of

18   the offense constitute "some evidence" that the crime "demonstrated an exceptionally callous

19   disregard for human suffering."  (*See id*. at 1-2.)  In addition, the superior court found that

20   there was "some evidence" to support the Board's finding that petitioner's motive was

21   inexplicable, because the Board could reasonably doubt petitioner's contention that he

22   participated in the crime out of his fear of his crime partner because petitioner "stayed with

REPORT AND RECOMMENDATION
ON MERITS OF PETITION -21

01 [crime partner] Bonnen for ten full days after the crime before finally leaving the state." (*Id.*

02 at 2-3.)  The superior court also found "some evidence" in the record to support the Board's

03 finding that petitioner has an unstable social history. (*See id.* at 3.)

04        Finally, the superior court found that "[p]etitioner's argument that the use of

05 confidential information without disclosure violated his rights is without merit," because a

06 prisoner may only review nonconfidential documents in the department central file.  (*See id.*)

07 Even in the absence of the confidential letter, "there is sufficient independent evidence to

08 support the Board's finding of unsuitability."  (*Id.*)  Accordingly, the superior court denied the

09 habeas petition.

10        VII.    CONCLUSION

11        As stated above, it is beyond the authority of a federal habeas court to determine

12 whether evidence of suitability outweighs the circumstances of the commitment offense,

13 together with any other reliable evidence of unsuitability for parole.  The Board has broad

14 discretion to determine how suitability and unsuitability factors interrelate to support its

15 conclusion of current dangerousness to the public.  *See Lawrence*, 44 Cal.4th at 1212.

16 Although the Board praised petitioner's progress in prison, it determined that petitioner

17 remains an unreasonable risk of danger to society if released on parole.  Because the state

18 court decision upholding the Board's findings satisfies the "some evidence" standard, there is

19 no need to reach respondent's argument that another standard applies.

20        Given the totality of the Board's findings, there is "some evidence" that petitioner

21 currently poses a threat to public safety, and the Los Angeles County Superior Court's Order

22 upholding the Board's decision was not contrary to, or an unreasonable application of, clearly

REPORT AND RECOMMENDATION
ON MERITS OF PETITION -22

01 established federal law, or based on an unreasonable determination of facts.  I therefore

02 recommend that the Court find that petitioner's due process rights were not violated, and that

03 it deny his petition and dismiss this action with prejudice.

04       This Report and Recommendation is submitted to the United States District Judge

05 assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days

06 after being served with this Report and Recommendation, any party may file written

07 objections with this Court and serve a copy on all parties.  Such a document should be

08 captioned "Objections to Magistrate Judge's Report and Recommendation."  Failure to file

09 objections within the specified time may waive the right to appeal the District Court's Order.

10 *See Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  A proposed order accompanies this

11 Report and Recommendation.

12       DATED this 1st day of September, 2009.

13

14

15 JOHN L. WEINBERG
    United States Magistrate Judge

16

17

18

19

20

21

22

REPORT AND RECOMMENDATION
ON MERITS OF PETITION -23